[No. S154790. Aug. 24, 2009.]

21st CENTURY INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SILVIA QUINTANA, Real Party in Interest.

512

## COUNSEL

Luce, Forward, Hamilton & Scripps, Peter H. Klee, John T. Brooks and Charles A. Danaher for Petitioner.

Gibson Robb & Lindh and Joshua E. Kirsch for National Association of Subrogation Professionals as Amicus Curiae on behalf of Petitioner.

Horvitz & Levy, John A. Taylor, Jr., David S. Ettinger; Robie & Matthai, James R. Robie, Kyle Kveton and Steven S. Fleischman for Association of California Insurance Companies, National Association of Mutual Insurance Companies, Personal Insurance Federation of California, Mercury Casualty Company and Mercury Insurance Company as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Law Office of Robert S. Gerstein, Robert S. Gerstein; Huffman & Kostas, James C. Kostas, David Huffman; Law Offices of Sheldon A. Ostroff and Sheldon A. Ostroff for Real Party in Interest.

**OPINION**

**CHIN, J.**—Silvia Quintana (Quintana) was injured in an automobile accident with a third party. She maintained an auto insurance policy with 21st Century Insurance Company (21st Century) that included first party, no-fault medical payment (med-pay) insurance coverage in case of an accident. 21st Century paid Quintana $1,000 under her insurance policy's med-pay provision. Quintana then separately pursued a damages claim against the third party and settled the action for $6,000, which sum represented her total damages. In obtaining the settlement, she incurred approximately $2,000 in attorney fees and costs (collectively attorney fees). Insurance policies typically have, and her policy did have, a provision requiring her to reimburse her insurer for monies she recovered from a third person that duplicated her recovery under her policy. Underlying these provisions, the basic idea is that insureds should not recover the same amount twice, once from their insurance company and again from a third party. In sum, insureds are entitled to be "made whole" from the insurance proceeds and tort recovery, but they are not entitled to a double recovery.

The narrow issue before us in this writ proceeding is whether the "made-whole rule" includes liability for all the attorney fees insureds must pay in order to obtain medical payment compensation from a third party tortfeasor. The issue arises at the intersection of two well-settled legal doctrines: (1) the made-whole rule, whereby a third party recovery must make the insured whole before he or she is obligated to reimburse the insurance company, and (2) the "common fund doctrine," whereby a party that benefits from another person's expenditure of attorney fees is required to bear a proportionate share (but not all) of that expenditure.

As we explain, we conclude that although the made-whole rule applies in the med-pay insurance context, and the insured must be made whole as to all damages proximately caused by the injury, liability for attorney fees is not included under the made-whole rule. Those fees instead are subject to a separate equitable apportionment rule (or pro rata sharing) that is analogous to the common fund doctrine we discuss below. We therefore affirm the Court of Appeal's judgment.[1]

---

[1] Our analysis is limited to auto insurance med-pay cases. The reason is that automobile insurance coverage may differ in scope from coverage under other liability policies or homeowner's property insurance that may or may not have reimbursement provisions, insurer participation requirements, or definitions that apply only to the particular insurance policy terms.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 8, 2003, Quintana suffered injuries in an automobile accident with a third party. Quintana's insurance company, 21st Century, paid her $1,000 under her insurance policy's med-pay provisions. Med-pay coverage pays the insured's reasonable and necessary medical expenses incurred due to an accident up to a relatively low dollar limit, in exchange for relatively low premiums. (See *Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 270 [37 Cal.Rptr.3d 434] (*Progressive West*).) The insurer provides coverage on a no-fault basis. The coverage is primarily designed to provide an additional source of funds for medical expenses for injured automobile occupants without the burdens of a fault-based payment system. There is no statutory obligation to provide med-pay coverage. (*Nager v. Allstate Ins. Co.* (2000) 83 Cal.App.4th 284, 289–290 [99 Cal.Rptr.2d 348].)

As noted, Quintana separately sued the third party tortfeasor and settled her action for $6,000. To obtain the settlement, she incurred $2,106.50 in attorney fees. Under its interpretation of the insurance policy's reimbursement provision, 21st Century requested that Quintana repay the $1,000 it had paid her.[2] Quintana paid 21st Century $600, an amount arrived at by taking the $1,000 med-pay benefits disbursed to her by 21st Century and subtracting attorney fees of $400 (approximately one-sixth of Quintana's total attorney fees of $2,106.50, one-sixth being the relationship between the $1,000 she received from 21st Century and her $6,000 settlement). 21st Century eventually agreed that amount fully satisfied its reimbursement claim, because it accounted for 21st Century's pro rata share of the attorney fees Quintana expended in collecting the damages from the third party tortfeasor.

Quintana subsequently filed a class action lawsuit against 21st Century, alleging four causes of action: (1) violation of Business and Professions Code section 17200, (2) conversion, (3) unjust enrichment, and (4) declaratory relief. Quintana asserted that 21st Century could not lawfully require any reimbursement under its policy terms because she had not been made whole by the third party damages settlement ($6,000) and medical payments received from the insurer ($1,000) when her attorney fees of $2,106.50 were included as part of her made-whole recovery. She argues that the made-whole rule requires the insurer to take into account all of the insured's litigation expenses when calculating whether or not the insured's recovery from a third party tortfeasor resulted in a surplus recovery entitling the insurer to some

---

[2] The reimbursement provision states: "REIMBURSEMENT TO US—PART II [¶] If we make any payment under this Part and the person insured or for whom the payment is made recovers damages from another person or organization, the person insured shall: [¶] 1. hold in trust for us the proceeds of the recovery; and [¶] 2. reimburse us to the extent of our payment." (Boldface omitted.)

reimbursement. After paying her attorney fees, Quintana recovered a total of $4,893.50 ($6,000 in settlement proceeds plus $1,000 in med-pay proceeds minus $2,106.50 in litigation expenses). She alleged that, because her total gross recovery of $4,893.50 after payment of attorney fees was less than her total damages of $6,000, she had not been made whole.

Quintana sought to represent the class of all "California policyholders, past and present, of [21st Century] who: (1) were not made whole after deducting all attorney fees from the money they received from the resolution of their claims against third party tortfeasors; (2) received an amount from 21st Century that was less than the amount paid by such policyholders for such attorney fees; and (3) paid 21st Century money in response to its demand for reimbursement of payments it paid under the med-pay coverage."

21st Century demurred to the complaint, asserting that Quintana did not state a cause of action because California law includes no attorney fees or costs in the made-whole calculation. 21st Century contended that reimbursement for attorney fees is separately determined under an equitable apportionment rule known as the common fund doctrine and its requirement that an insurer pay a pro rata portion of attorney fees once the insured recovers his or her damages. In other words, 21st Century claimed that Quintana's interpretation of the made-whole rule conflicted with the common fund doctrine. The trial court overruled the insurer's demurrer.

21st Century filed a petition for writ of mandate with the Court of Appeal challenging the trial court's order. The Court of Appeal issued an order to show cause and ordered 21st Century's writ petition to be considered with four other writ petitions, all filed in the Fourth Appellate District in San Diego County, which raised the identical legal issue against different insurers. The Court of Appeal held that the made-whole rule does not require an insurer seeking reimbursement to consider the attorney fees the insured expended in recouping his or her losses from the tortfeasor. Those expenses, the court held, fall under the common fund doctrine. The court therefore granted 21st Century's petition for writ of mandate and ordered the trial court to vacate its judgment and enter a new order sustaining the demurrer. We granted Quintana's petition for review challenging the Court of Appeal's decision that attorney fees are not properly considered when calculating an insured's liability for reimbursement under the made-whole rule.

Quintana contends that insurance companies are not entitled to reimbursement of payments they made under med-pay policy provisions unless the insured has been reimbursed for 100 percent of his or her attorney fees. She argues for an interpretation of the made-whole rule that would require that attorney fees be deducted from the total amount recovered in the third party

tortfeasor litigation. Quintana urges the court to hold that the made-whole rule is not satisfied when the insured's damages recovery is reduced by the obligation to pay attorney fees. By contrast, 21st Century contends that neither California case law nor the policy justifications underlying the made-whole rule and the common fund doctrine support Quintana's position. As we explain, we agree with 21st Century.

## DISCUSSION

### A. *Contractual Subrogation and Reimbursement*

■ Med-pay insurers must seek recovery for personal injury claims through contractual reimbursement rights against their insureds, because they are not allowed to assert subrogation claims directly against third party tortfeasors. (*Progressive West, supra,* 135 Cal.App.4th at p. 272.) The rule is based on the premise that personal injury claims are not assignable, and therefore a med-pay insurer generally has no right to sue the tortfeasor directly and has no standing to intervene. (See *Lee v. State Farm Mut. Auto. Ins. Co.* (1976) 57 Cal.App.3d 458, 466 [129 Cal.Rptr. 271] (*Lee*).) Although *Progressive West* suggests that an insurer may interplead into a third party action, the interpleader has typically been limited to property damage cases and has not been allowed in the personal injury context. (See *California Physicians' Service v. Superior Court* (1980) 102 Cal.App.3d 91, 95–97 [162 Cal.Rptr. 266] [rejecting interpleader in third party action].)

If insureds must reimburse their insurers once they recover from the tortfeasors, they are prevented from receiving double recovery and the financial responsibility for their loss is placed on the tortfeasor. (See *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 11, fn. 17 [84 Cal.Rptr. 173, 465 P.2d 61] (*Helfend*).) Med-pay insurance contracts typically contain provisions that grant the insurer a right of reimbursement for certain payments that the third party who caused the insured's losses makes to the insured. These provisions are often interchangeably referred to as reimbursement or subrogation provisions but, in the present context, are appropriately called reimbursement provisions.[3] (See *Progressive West, supra,* 135 Cal.App.4th at p. 273.)

---

[3] As *Progressive West* observed, a leading insurance law commentator has pointed out a technical difference between subrogation and reimbursement that we recognize in California. (16 Couch, Insurance (3d ed. 2000) § 222:2, pp. 222-10–222-14.) *Progressive West* acknowledged that the difference, however, does not affect application of the made-whole rule. "Subrogation refers to the right of the insurance company to step into the shoes of the insured and assert the insured's rights against the third party. . . . Reimbursement refers to the right to receive payment back of what has been expended by the insurance company. . . . In California, both the subrogation rights and reimbursement rights of the insurance company fall within the rubric of subrogation. . . . Thus, both of those rights are limited by the made-whole rule." (*Progressive West, supra,* 135 Cal.App.4th at p. 273, citations omitted.)

### B.  *The Made-whole Rule*

■   The made-whole rule is a common law principle that limits the insurer's reimbursement right in situations where the insured has not recovered his or her "entire debt." (See *Sapiano v. Williamsburg Nat. Ins. Co.* (1994) 28 Cal.App.4th 533, 536 [33 Cal.Rptr.2d 659] (*Sapiano*); *Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 104 [102 Cal.Rptr.2d 36] (*Plut*).) The rule precludes an insurer from recovering any third party funds paid to the insured until the insured has " 'been fully compensated for [his or] her injuries . . . .' " (*Plut, supra,* 85 Cal.App.4th at p. 104.)

California courts recognize a made-whole rule when—typically due to underinsurance—the tortfeasor could not pay his or her "entire debt" to the insured: " 'The general rule is that an insurer that pays a portion of the debt owed to the insured is not entitled to [reimbursement] for that portion of the debt until the debt is fully discharged.' " (*Sapiano, supra,* 28 Cal.App.4th at p. 536, quoting 2 Cal. Insurance Law & Practice (1988 rev.) § 35.11[4][b], p. 35-47.) *Sapiano's* definition of the made-whole rule does not consider attorney fees, and is the "established California rule." (*Sapiano, supra,* 28 Cal.4th at pp. 536–537.) Indeed, no California court has ever held that an insured was not made whole because he or she had to bear the attorney fees incurred in recovering damages not covered by the insurance contract.

■   The made-whole rule was extended to med-pay reimbursement claims in 2005. (*Progressive West, supra,* 135 Cal.App.4th at p. 273.) *Progressive West* held that parties may properly contract around the rule so long as the contractual language clearly specifies that the parties intend to permit the insurer to obtain reimbursement even if the policyholder has not been made whole. (*Id.* at pp. 274–275.) The rule applies in the automobile insurance context; it prevents the insurer's reimbursement rights from conflicting with the insured's rights to obtain full performance under the insurance policy. (*American Contractors Indemnity Co. v. Saladino* (2004) 115 Cal.App.4th 1262, 1271 [9 Cal.Rptr.3d 835].) The rule makes sense in the underinsurance context because it keeps " 'the recovery rights of the [insurer] from conflicting with the [insured's] rights to eventually obtain full performance of the original, underlying obligation.' " (*Ibid.*)

### C.  *Common Fund Doctrine*

■   As noted, 21st Century agrees with the Court of Appeal and contends that although the made-whole rule applies in the med-pay context potentially to reduce an insurer's reimbursement right, it does not apply to the insured's claim for attorney fees. Rather, 21st Century claims that California law requires only that the insurer bear a pro rata share of the attorney fees the

insured incurred in obtaining recovery from the tortfeasor. Under the pro rata rule, as derived from the equitable common fund doctrine, each party bears attorney fees in proportion to its share of the recovery. As 21st Century notes, under pro rata sharing, the insurer pays all the attorney fees attributable to recovering the med-pay expenses for which it seeks reimbursement, while the insured—like any other litigant—pays fees incurred in pursuing recovery for additional damages (such as for pain and suffering). The rule provides a separate and independent limitation on an insurer's reimbursement rights.

The common fund doctrine originated in the class action context. (*Lee, supra,* 57 Cal.App.3d at p. 467.) Under the doctrine, " '[w]hen a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund.' " (*Ibid.*) The United States Supreme Court introduced the common fund doctrine into American jurisprudence over 100 years ago in two decisions that did not involve insurance reimbursement or subrogation. (See *Trustees v. Greenough* (1881) 105 U.S. 527 [26 L.Ed. 1157]; *Central Railroad v. Pettus* (1885) 113 U.S. 116 [28 L.Ed. 915, 5 S.Ct. 387].) But it was not until the landmark decision in *United Services Auto. Assn. v. Hills* (1961) 172 Neb. 128 [109 N.W.2d 174] that the common fund doctrine was extended to insurance law.[4]

We first applied the common fund doctrine for attorney fees reimbursement in the insurance context in *Quinn v. State of California* (1975) 15 Cal.3d 162 [124 Cal.Rptr. 1, 539 P.2d 761] (*Quinn*). The insured requested an apportionment of attorney fees between himself and his insurer, which sought reimbursement of workers' compensation benefits paid to the insured. *Quinn* recognized that American courts "have never awarded counsels' fees as a routine component of costs, [but] at least one exception to this rule has become as well established as the rule itself: that one who expends attorneys' fees in winning a suit [that] creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs." (*Id.* at p. 167, fn. omitted.) Finding that the insurance company would otherwise be unjustly enriched, we required the insurer to pay a pro rata share of the policyholder's attorney fees. (*Id.* at p. 176.)

Shortly after we decided *Quinn,* the Court of Appeal in *Lee, supra,* 57 Cal.App.3d at page 464, reexamined the common fund doctrine's application.

---

[4] When an insured, as in this case, recovers damages from a third party tortfeasor, the insured does not actually create a fund from which others derive benefits—rather, the "group" derives benefits to the extent that the insurer has a reimbursement interest in those recovered damages. Accordingly, it would be more accurate to describe this system of pro rata sharing as a derivative of the common fund doctrine. (See generally Parker, *The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation* (1998) 31 Ind. L.Rev. 313.)

In *Lee*, the insurance company disputed the lower court's judgment requiring it to bear a pro rata share of the policyholder's attorney fees when seeking reimbursement of medical payments out of a settlement with a third party tortfeasor. (*Ibid.*) As *Lee* noted, "[i]t has been clearly established in California that [med-pay reimbursement provisions] . . . are valid and enforceable." (*Id.* at pp. 465–466.) The court emphasized: " 'While [the insured] has a right to seek to be made whole, it is unfair for him to seek enrichment by double recovery which would result from retention of all proceeds of the settlement of his suit [against the tortfeasor] . . . and of all medical and hospital benefits paid to him by [the insurer] under its [insurance] agreement—for the same injuries—all eventually at the cost of the participating members of the plan.' " (*Id.* at p. 465, quoting *Block v. Cal. Physicians' Service* (1966) 244 Cal.App.2d 266, 273 [53 Cal.Rptr. 51].) Under the common fund doctrine, *Lee* then affirmed the trial court's order requiring the insurer to "pay a pro rata share of attorney's fees incurred by [the insured] in securing a settlement or recovery out of which the reimbursement was required." (*Lee, supra*, 57 Cal.App.3d at p. 460.) Since *Lee* was decided, at least one California court has assumed the common fund doctrine applies to the insured's recovery of attorney fees expended in med-pay reimbursement claims. (See *Samura v. Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1297 [22 Cal.Rptr.2d 20] [court will reduce insurer's reimbursement right under a third party liability provision in a contract for health services by insurer's pro rata share of insured's costs in securing judgment or settlement from third party].)

### D. *Relevant Case Law on Recovery Under the Made-whole Rule*

California cases have not been explicit on how they apply the made-whole rule and common fund doctrines to the attorney fees question in the med-pay reimbursement context we consider here. Indeed, the specific issue of the appropriate calculation of the insured's recovery under the made-whole rule is one of first impression in this court. For example, in *Plut*, the insurer under a homeowner's insurance policy paid the insureds $71,378.42 for water damage and theft caused by a third party. (*Plut, supra*, 85 Cal.App.4th at p. 101.) The insureds then sued the third party tortfeasors and settled the action for a total of $600,000. (*Id.* at p. 102.) The insurer did not participate in the action or the settlement, although the insureds apprised it of developments in the action and invited an insurance representative to the settlement conference. The insureds ultimately received $380,000 after paying attorney fees. (*Ibid.*)

In a separate action, the insureds then sued the insurer for breach of contract and breach of the implied covenant of good faith and fair dealing for its settlement claims practices. (*Plut, supra*, 85 Cal.App.4th at pp. 102–103.) A jury awarded the insureds damages in the amount of $536,876.50, but the

trial court reduced the award to $85,498.08 in light of the settlement and the previous payments made to the insureds. (*Id.* at p. 103.)

In reviewing the trial court's actions, the appellate court discussed the made-whole rule at length, noting that because the insurer does not participate in the action against the third party, the insurer is entitled to reimbursement only after the insured has recouped its loss and "some or all" of the litigation expenses incurred in the action against the third party tortfeasor. (*Plut, supra,* 85 Cal.App.4th at p. 105.) The court did not further elaborate on the phrase "some or all," or on whether its reasoning conflicted with the common fund doctrine. Rather, the court held that the jury's damage award reflected the insureds' total losses, and thus was intended to make them whole for all claims. (*Id.* at p. 106.)

In *Progressive West,* the insurer sued the policyholder for reimbursement of medical payments after the insured recovered damages from the person who injured him in a car accident. The insured filed a cross-complaint alleging breach of contract, tortious breach of the covenant of good faith and fair dealing, and unfair business practices, arguing that the insurer could not obtain reimbursement until the insured had been made whole. (*Progressive West, supra,* 135 Cal.App.4th at pp. 270, 273.) In addition, under the common fund doctrine, the insured claimed that any reimbursement must be reduced by the amount of attorney fees attributable to the recovery of the funds. The insurer asserted that neither the made-whole rule nor common fund doctrine applied.

*Progressive West* held that the made-whole rule applied to reimbursement claims and that the policy language did not vitiate the rule's application. (*Progressive West, supra,* 135 Cal.App.4th at pp. 273, 275.) In discussing application of the common fund doctrine to the attorney fees, *Progressive West* held that under the doctrine, "an insurance company that does not participate in the underlying action must pay a pro rata share of the insured's attorney fees and costs when it seeks reimbursement from its insured out of funds obtained by the insured from the responsible third party. [Citation.] That is, the insurance company's reimbursement must be reduced proportionately to reflect the attorney fees paid by the insured. [Citation.]" (*Id.* at p. 276.)

### E. *Application of the Made-whole Rule in Sister States*

Although the made-whole and common fund doctrines are each well established in other contexts, the interaction of these two rules has yet to be delineated. As noted, *Progressive West* and *Plut* observe that the insureds should recoup *some or all* of their attorney fees. (*Progressive West, supra,* 135

Cal.App.4th at p. 273; *Plut, supra,* 85 Cal.App.4th at p. 105.) However, this language does not definitively indicate whether insureds should recover *some* attorney fees, as under the pro rata common fund doctrine, or *all* attorney fees, as under an expanded view of the made-whole rule.

Our research indicates that case law of other jurisdictions does not provide us with much additional guidance on the interaction between these two rules. Numerous jurisdictions, including California, recognize the made-whole rule in insurance cases. (See Parker, *The Made Whole Doctrine: Unraveling the Enigma Wrapped in the Mystery of Insurance Subrogation* (2005) 70 Mo. L.Rev. 723, 774, fn. 396.) Like California, these jurisdictions have reached no clear consensus on the issue here. Alabama, for instance, does not consider attorney fees in determining whether an insured has been made whole, but allows for pro rata sharing under the common fund doctrine where an insurer benefits directly from an attorney's efforts in obtaining recovery for his or her client. (*CNA Ins. Cos. v. Johnson Galleries* (Ala. 1994) 639 So.2d 1355, 1357.) Wisconsin currently holds that the made-whole rule is a net rule that permits the insurer to seek reimbursement of its med-pay expenses and considers the insured made whole even if he or she must pay attorney fees out of the funds recovered from the tortfeasor. (See, e.g., *Ives v. Coopertools* (1997) 208 Wis.2d 55 [559 N.W.2d 571, 582]; see also *Oakley v. Fireman's Fund of Wisconsin* (1991) 162 Wis.2d 821 [470 N.W.2d 882, 886], distinguishing *Garrity v. Rural Mutual Ins. Co.* (1977) 77 Wis.2d 537, 544 [253 N.W.2d 512, 515] as not considering new "net whole" Wisconsin rule.) By contrast, Michigan includes "costs and expenses" in calculating whether an insured has been made whole, although an insurer that benefits by virtue of a subrogation clause may be required to deduct from its reimbursement claim a pro rata share of attorney fees under the common fund doctrine. (See *Washtenaw Mutual Fire Ins. Co. v. Budd* (1919) 208 Mich. 483 [175 N.W. 231, 232] [made-whole rule]; *Foremost Life Ins. Co. v. Waters* (1983) 125 Mich.App. 799 [337 N.W.2d 29, 32–33] [common fund doctrine].)[5]

Without engaging in any extended legal analysis, some jurisdictions seem simply to have assumed that the made-whole rule should include attorney fees. (See, e.g., *Central National Ins. Group v. Hotte* (Fla.Dist.Ct.App. 1975) 312 So.2d 235, 237; *Washtenaw Mutual Fire Ins. Co. v. Budd, supra,* 175 N.W. at p. 232; *St. Paul Fire & Marine Ins. Co. v. W.P. Rose Supply Co.* (1973) 19 N.C.App. 302 [198 S.E.2d 482, 485]; *Nationwide Mutual Ins. Co., supra,* 28 Pa.D.&C.3d at p. 629; *Gibbs M. Smith, Inc. v. U.S. Fidelity* (Utah

---

[5] Other jurisdictions that appear to follow this view include Pennsylvania and Texas. (See *Cataldi v. Methodist Hosp.* (2000) 2000 PASuper 65 [747 A.2d 1239, 1241] [common fund]; *Nationwide Mutual Ins. Co. v. Butler* (1983) 28 Pa.D.&C.3d 627, 629 [made whole]; *Lancer Corp. v. Murillo* (Tex.App. 1995) 909 S.W.2d 122, 126 [common fund]; *Ortiz v. Great Southern Fire & Cas. Ins. Co.* (Tex. 1980) 597 S.W.2d 342, 343 [made whole].)

1997) 949 P.2d 337, 345–346.) Montana is the principal jurisdiction adhering to this position that has analyzed the issue, and the courts there actually appeal to equitable principles as grounds for their conclusion. (See, e.g., *DeTienne Associates v. Farmers Union Mutual Ins.* (1994) 266 Mont. 184 [879 P.2d 704, 708–709]; see also *Skauge v. Mountain States Telephone & Telegraph Co.* (1977) 172 Mont. 521 [565 P.2d 628, 632] (*Skauge*).)

## F. The Federal District Court

Quintana relies on a more recent federal district court decision that attempted to predict what California courts would do when faced with application of the made-whole rule when the insured's reimbursement obligation arguably conflicts with his or her right to a full recovery for damages suffered in an accident. (*Chong v. State Farm Mut. Auto. Ins. Co.* (S.D.Cal. 2006) 428 F.Supp.2d 1136 (*Chong*).) In *Chong*, the insured alleged unfair business practices and other common law claims against her insurer for seeking reimbursement of medical payments after she settled her claim with the third party tortfeasor. (*Id.* at p. 1138.) The insured argued that the insurer could not seek reimbursement until she had been made whole for all of her damages and her attorney fees.

*Chong* interpreted California law and concluded that this court would likely hold that, absent a contrary contractual provision, the made-whole rule requires that an insured fully recover his or her damages and litigation expenses, including *all* attorney fees, before an insurer who is not participating in the tort litigation may seek reimbursement from any tort recovery. (*Chong, supra,* 428 F.Supp.2d at p. 1146.) The district court reviewed the relevant case law and found that none of the cited California cases shed light on the issue before it. It noted that *Plut* and *Progressive West* lent some support to the insured's claim, but were not dispositive. (*Chong, supra,* 428 F.Supp.2d at p. 1143.)

*Chong* held, however, that in light of the relevant language of *Plut* and *Progressive West*, this court would likely follow the sister state jurisdictions holding that all of the insured's litigation expenses must be taken into account when determining whether the insured has been made whole. (*Chong, supra,* 428 F.Supp.2d at pp. 1144–1145.) *Chong* determined that including attorney fees in the made-whole analysis does not provide the insured with a windfall, but rather places the insured closer to the situation in which he or she would have been had the loss not occurred. (*Ibid.*) The court observed that "when a policyholder's attorney fees and costs exceed the amount the [insurer] paid in policy benefits, there is no surplus" in the hands of the insured and therefore no obligation to reimburse the insurer. (*Ibid.*) *Chong* concluded that its result was not unfair to the insurer because "[i]f either the

policyholder or the carrier must to some extent go unpaid . . . 'the loss should be borne by the insurer for that is the risk the insured has paid it to assume.' " (*Id.* at p. 1145, italics omitted, quoting *Skauge, supra,* 565 P.2d at p. 632.)

*Chong* reasoned that insurance companies can avoid this result by specifically contracting around the common law rules with clear policy language. (*Chong, supra,* 428 F.Supp.2d at p. 1145.) A contrary result would be unfair to insureds because it would allow insurers to "sit on the sidelines" while their insureds undertake lawsuits against third parties, and then collect reimbursement if the insureds ultimately obtain favorable judgments. (*Ibid.*) As a final point, *Chong* noted that plaintiffs sometimes account for their attorney fees when determining an acceptable settlement amount. (*Id.* at p. 1146, fn. 7.) It indicated that discovery would likely show whether a settlement reflected only the insured's damages, or damages plus attorney fees.

We find *Chong*'s reasoning unpersuasive. As 21st Century observes, *Chong* concluded that under a pro rata apportionment rule, if the insured must pay a portion of the attorney fees, he or she would net less than the total loss, and that difference "is the risk the insured has paid it to assume." The court's assumption ignores the limited nature of med-pay insurance. (*Chong, supra,* 428 F.Supp.2d at p. 1145.) In addition, *Chong*'s observation that the law permits the insurer to "sit on the sidelines" and incur no risk ignores the fact that the insurer is generally prohibited from intervening in a personal injury case (see *Lee, supra,* 57 Cal.App.3d at p. 466), and that the insureds' attorneys are likely to resist insurer participation in any event. For these reasons, we cannot adopt *Chong*'s ultimate holding as California law.

## G. *Other Considerations*

Because no California case speaks directly to the question, and our sister states do not provide definitive guidance, we find it helpful to turn to the policy underlying the doctrines. As we have observed, the primary policy justification for insurance reimbursement provisions is to prevent insureds from receiving double recoveries for their damages. (*Helfend, supra,* 2 Cal.3d at p. 8, fn. 7.) Quintana claims, however, that allowing insured tort victims to receive full compensation for their attorney fees under the made-whole rule would not give them double recovery, but would provide them an amount closer to a full recovery and put them nearer to the position they were in before the injury. (*Helfend, supra,* 2 Cal.3d at p. 13.)

As 21st Century points out, Quintana's interpretation of the made-whole rule implicitly relies on *Chong*'s point that it would be unfair to insureds to allow insurers to sit out of lawsuits and then collect reimbursement. (*Chong,*

*supra*, 428 F.Supp.2d at p. 1145.) As we have observed, this justification is erroneous. Med-pay insurers are generally prohibited by law from participating in personal injury lawsuits, thus making their participation difficult, if not impossible. Even assuming these insurers could intervene, they would have no financial incentive to participate, given the likelihood that the attorney fees would exceed the amount of reimbursement sought. Also, plaintiffs' attorneys may not want insurers to intervene in lawsuits, as the insurers' litigation goals of reimbursement may conflict with the plaintiffs' interest in recovery for losses beyond the low med-pay amount.

Quintana also relies on *Chong* to assert that "[i]f either the policyholder or the [insurer] must to some extent go unpaid because the policyholder has recovered less than her total loss, 'the loss should be borne by the insurer for that is the risk the insured has paid it to assume.' " (*Chong, supra*, 428 F.Supp.2d at p. 1145, italics omitted, quoting *Skauge, supra*, 565 P.2d at p. 632.) Although this reasoning may hold true in certain insurance situations, in the context of med-pay insurance the insured has not contracted for the insurer to assume any risk beyond the insured's medical payments. Quintana's lower premiums provide her only with medical payments in the event of an accident. If she decides to pursue a claim against the tortfeasor for her uninsured damages, she should be responsible for the attorney fees and costs necessary to recover those damages. In sum, Quintana has not paid 21st Century to assume the risk of paying attorney fees for uninsured losses on her behalf.

■ Quintana next relies on the collateral source rule, a related doctrine, which provides that because juries are not informed of the contingent fee arrangement typical in tort cases, "plaintiff[s] rarely actually receive[] full compensation for [their] injuries as computed by the jury. The collateral source rule partially serves to compensate for the attorney's share and does not actually render 'double recovery' for the plaintiff." (*Helfend, supra*, 2 Cal.3d at p. 12.) The important distinction that Quintana attempts to blur is that *Helfend* addresses the collateral source rule, which prohibits the reduction of damages a tortfeasor owes to the plaintiff because the plaintiff received compensation from an independent source. (*Id.* at p. 6.) The collateral source rule, however, addresses the distribution of attorney fees between a plaintiff and a tortfeasor defendant, not between an insured and an insurance company.

■ Quintana also asserts that the implied covenant of good faith and fair dealing supports her position. We disagree. As *Progressive West* observed, the implied covenant does not apply to a dispute over med-pay reimbursement rights. (*Progressive West, supra*, 135 Cal.App.4th at pp. 276–281.) We have also held that one cannot invoke the implied covenant to prohibit conduct that

a contract expressly allows. "We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms." (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374 [6 Cal.Rptr.2d 467, 826 P.2d 710].) In addition, we have held that courts "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349–350 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

Ultimately, were we to adopt Quintana's position we would effectively shift the burden of paying attorney fees in personal injury actions from insureds to first party insurers because insurers would have to forgo reimbursement in order to account for the insureds' attorney fees. In turn, the first party insurers would presumably pass some portion of these additional costs on to consumers by increasing the premiums due on med-pay policies, thus rendering med-pay insurance less accessible to those who need it most.

Unlike Quintana's interpretation of the made-whole rule, the pro rata allocation of attorney fees that is made under the common fund doctrine is equally applicable in the med-pay context because it adequately balances the interests of insureds and insurers. The insured receives the benefit of expedient medical payments at lower premiums, and he or she may retain the insurance payments if he or she does not recover directly from the third party tortfeasor.

On the other hand, if the insured recovers for both insured and uninsured losses from a third party, the made-whole doctrine enables the insured to receive full compensation for actual damages before the insurer may receive reimbursement. In cases like this, where the insured does not dispute that the settlement adequately compensated her damages, a pro rata apportionment requires the insurer to account for its fair share of the attorney fees by reducing the amount of reimbursement to cover some portion of those fees. The responsibility for attorney fees is therefore properly allocated according to what the parties contracted for and the risks each party agreed to bear.

## CONCLUSION

In light of the policy justifications underlying the made-whole rule and reimbursement principles generally, we conclude that 21st Century states the better case. The automobile liability insurance company has not been paid to bear responsibility for the entire amount of attorney fees and costs the

insured needed to spend in order to recover damages. Instead, a pro rata apportionment rule for attorney fees here better allocates responsibility for attorney fees between the insured and the insurer. Quintana does not claim that 21st Century's $1,000 payment was insufficient to discharge its obligations under the med-pay policy limit. Nor has she claimed that $400 was less than 21st Century's pro rata share of the litigation costs, or asked for leave to amend should we affirm the Court of Appeal's judgment. Therefore, by accepting the $600 as full reimbursement (and thus contributing $400 to Quintana's attorney fees), 21st Century has properly discharged its obligation to pay its pro rata share of attorney fees and has ensured that Quintana has been made whole. In light of this conclusion, we affirm the Court of Appeal's judgment.

George, C. J., Baxter, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J.,** Concurring.—The majority holds that an automobile insurer's contractual right of reimbursement for medical payment benefits is subject to the equitable common law "made-whole" rule, and that the rule is satisfied when the insurer has contributed its pro rata share of the litigation costs that the insured has incurred to recover personal injury damages from a third party tortfeasor.

I agree with the majority's conclusions; I write separately to explain why. In brief, the position urged by the insured in this case is contrary to established California law, it is inconsistent not only with the "American rule" that parties normally bear their own litigation costs but also with the scheme for reimbursement of workers' compensation benefits, it would convert medical payment coverage into legal expense coverage, and it would result in higher premiums for California purchasers of automobile insurance coverage.

## I

In December 2003, plaintiff Silvia Quintana was injured in an automobile accident with a third party. Her automobile insurer, defendant 21st Century Insurance Company (21st Century), paid her $1,000 under the policy's no-fault medical payment coverage. Plaintiff then settled her personal injury tort claim against the third party. Under that settlement, the third party paid plaintiff $6,000 as full compensation for all personal injury damages she sustained in the automobile accident. In pursuing her claim against the third party, plaintiff incurred $2,000 in attorney fees and $106.50 in other litigation costs. When 21st Century learned of the full-compensation settlement with the third party, it invoked the automobile insurance policy's reimbursement provision, seeking reimbursement of the medical payment benefits it had

provided. Plaintiff repaid $600, which 21st Century accepted as full reimbursement after deduction of its pro rata share ($400) of plaintiff's litigation expenses.

Plaintiff then brought this class action lawsuit against 21st Century, alleging causes of action for unfair competition, conversion, unjust enrichment, and declaratory relief. She claimed that under the common law made-whole rule, 21st Century was not entitled to any reimbursement because, when litigation costs were taken into account, she had not been fully compensated for her personal injury loss caused by the car accident. She reasoned that her total loss was $6,000, as evidenced by the settlement, and that she had received a total of $7,000—$1,000 from 21st Century as medical payment benefits and $6,000 from the third party as tort damages. From this $7,000, plaintiff deducted the $2,106.50 in litigation costs she had incurred, leaving her a net recovery of $4,893.50, which was less than her $6,000 personal injury loss. Plaintiff argued that because her *net recovery after deduction of litigation expenses* was less than her personal injury loss, she had not been "made whole" and therefore was not required to pay any reimbursement to 21st Century. She sought to represent a class of similarly situated 21st Century policyholders.

21st Century demurred to the complaint. It argued that, under settled California law, litigation costs are not deducted from a third party recovery when calculating whether an insured has been made whole, but instead those litigation costs are equitably apportioned between the insurer and the insured. 21st Century argued that plaintiff was made whole when she accepted $6,000 from the third party tortfeasor as full compensation for her personal injury damages, and that the litigation costs had been appropriately and equitably apportioned between 21st Century and plaintiff by deducting $400 from the $1,000 in medical payment benefits, resulting in a net reimbursement to 21st Century of $600.

When the trial court overruled its demurrer, 21st Century sought and obtained writ review from the Court of Appeal, which ruled in its favor. This court granted plaintiff's petition for review.

## II

Plaintiff Quintana contends that, because her litigation costs exceed the $1,000 that 21st Century paid to her under the medical payment coverage, 21st Century cannot obtain any reimbursement from plaintiff under the insurance policy's reimbursement provision. This court properly rejects plaintiff's contention, concluding instead that the litigation expenses she incurred in pursuing her tort claim against the third party should be equitably

apportioned between plaintiff and 21st Century, so that 21st Century pays only those expenses attributable to recovery of the insured portion of the loss, while plaintiff bears the expenses attributable to recovery of the uninsured portion of the loss. Here, plaintiff's litigation expenses were equitably apportioned when 21st Century agreed to accept $600 as full reimbursement of the $1,000 it paid to plaintiff under the medical payment coverage.

Equitable apportionment (also called pro rata sharing) of litigation expenses between insurer and insured has been settled law in California for more than 30 years. In *Lee v. State Farm Mut. Auto. Ins. Co.* (1976) 57 Cal.App.3d 458 [129 Cal.Rptr. 271], an automobile insurance policy included a provision requiring reimbursement of medical payments. The Court of Appeal there held that the reimbursement provision was valid but also that the insurer was required "to pay a pro rata share of attorney's fees incurred by [the insureds] in securing a settlement or recovery out of which the reimbursement was required." (*Lee v. State Farm Mut. Auto. Ins. Co., supra,* at p. 460.) In reaching that result, the Court of Appeal relied in part on *Quinn v. State of California* (1975) 15 Cal.3d 162 [124 Cal.Rptr. 1, 539 P.2d 761], in which an injured employee, after receiving workers' compensation benefits, had recovered a judgment against a third party tortfeasor. This court held that the workers' compensation insurer was entitled to reimbursement from the proceeds of the judgment, but also that it was required "to bear a fair share of the litigation costs." (*Quinn v. State of California, supra,* at p. 167; see also *Summers v. Newman* (1999) 20 Cal.4th 1021, 1030 [86 Cal.Rptr.2d 303, 978 P.2d 1225].)

The settled California law on this point has been described in these words: "[A]n insurance company that does not participate in the underlying action must pay a pro rata share of the insured's attorney fees and costs when it seeks reimbursement from its insured out of funds obtained by the insured from the responsible third party. [Citation.] That is, the insurance company's reimbursement must be reduced proportionately to reflect the attorney fees paid by the insured. [Citation.]" (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 276 [37 Cal.Rptr.3d 434].)

There is nothing to the contrary in *Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98 [102 Cal.Rptr.2d 36]. The Court of Appeal's decision there cited with approval *Lee v. State Farm Mut. Auto. Ins. Co., supra,* 57 Cal.App.3d 458, for the proposition that an insurer may obtain reimbursement "only after the insured has recouped his loss *and* some or all of his litigation expenses incurred in the action against the tortfeasor." (*Plut v. Fireman's Fund Ins. Co., supra,* at p. 105.) This is an accurate, albeit imprecise, description of California law on this point. When the insured portion of the loss comprises only part of the damages that the insured recovers from the tortfeasor, the

insured is entitled to recoup *some* of the litigation expenses. To state the rule more precisely, in that situation the insured is entitled to recoup the litigation expenses attributable to recovery of the insured portion of the loss. When the entire loss is covered by insurance, by comparison, the insured would be entitled to recoup all of the litigation expenses incurred in the action against the tortfeasor.[1]

The settled law requiring pro rata sharing of litigation costs by insurer and insured is consistent with the theory underlying the "American rule," which is that full compensation for a wrongful injury ordinarily does not include reimbursement of litigation costs. "Embodied in Code of Civil Procedure section 1021, the 'American rule' states that except as provided by statute or agreement, the parties to litigation must pay their own attorney fees." (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1257 [45 Cal.Rptr.3d 362, 137 P.3d 192]; accord, *Musaelian v. Adams* (2009) 45 Cal.4th 512, 516 [87 Cal.Rptr.3d 475, 198 P.3d 560].) Although by statute a personal injury victim has a right to recover from a tortfeasor "the amount which will compensate for all the detriment proximately caused" by the tort (Civ. Code, § 3333), that amount ordinarily does not include attorney fees incurred in bringing the lawsuit against the tortfeasor. (See *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 506 [198 Cal.Rptr. 551, 674 P.2d 253] [noting that, subject to certain narrow exceptions, there is "a consistent line of cases decided since 1872 . . . which . . . deny attorney fees to the prevailing party in an action for tort"].) If the burden of attorney fees incurred to obtain a personal injury recovery for a tort claim may not be shifted to the party who caused the injury and is legally obligated to fully compensate the victim, what justification is there for shifting all of that burden to an insurance carrier that agreed to provide medical benefits coverage for only a small portion of the loss (here, $1,000 of the total of $6,000 in personal injury damages)? Equitably apportioning attorney fees between insurer and insured, so that the insurer pays only the litigation expenses attributable to recovery of the benefits it was contractually obligated to provide, more appropriately complies with the dictate of the American rule that parties must bear their own litigation expenses.

Settled California law requiring pro rata sharing of litigation costs by insurer and insured in the context of automobile insurance is also consistent with the law applied in the analogous workers' compensation situation. As I have already mentioned, when an injured employee who has received workers' compensation benefits obtains a judgment against a third party tortfeasor, a workers' compensation insurer seeking reimbursement from the judgment

---

[1] *Chong v. State Farm Mut. Auto. Ins. Co.* (S.D.Cal. 2006) 428 F.Supp.2d 1136 is contrary to the settled law as I have described it, but it is merely an interlocutory ruling by a federal trial court attempting to interpret California law, and thus it has no significant value as precedent.

proceeds must bear a pro rata share of litigation costs. (*Quinn v. State of California, supra,* 15 Cal.3d 162, 167; see Lab. Code, § 3600, subd. (b).) The equitable sharing approach that this court has determined to be fair and appropriate for litigation expenses in the context of workers' compensation benefits is equally fair and appropriate here in the context of medical payment benefits under an automobile insurance policy.

As a practical matter, the rule proposed by plaintiff Quintana would in most cases preclude, as it would here, any insurer reimbursement for medical payment benefits provided under an automobile insurance policy. This is because the policy limits of medical payment coverage, which "generally rang[e] from $5,000 to $10,000" (*Nager v. Allstate Ins. Co.* (2000) 83 Cal.App.4th 284, 289 [99 Cal.Rptr.2d 348]), are less than the average litigation costs for a personal injury action. The net effect of adopting plaintiff's proposed rule, therefore, would be to convert automobile insurance medical payment coverage into litigation expense coverage, thereby giving insureds a benefit for which they have not paid and forcing automobile insurers to bear a risk they did not contractually agree to assume.

Plaintiff's proposed rule, which would deny any reimbursement to the insurer in this case, and which hereafter would deny any reimbursement to other automobile insurers in similar cases, would increase the cost of providing medical payment coverage. To recoup that increased cost, automobile insurers would need to raise the premiums they charge for this coverage. (See *Mercury Casualty Co. v. Maloney* (2003) 113 Cal.App.4th 799, 801 [6 Cal.Rptr.3d 647] [automobile insurer offered "more expensive" medical payment coverage that did not include a reimbursement provision].) In this way, the ultimate effect of plaintiff's proposed rule would be to make medical payment coverage more costly for California purchasers of automobile insurance.

To sum up, in the medical payment situation the made-whole rule is satisfied when the insured has received an amount that compensates for all the personal injury damages to which the insured is entitled under California law. Here, in accepting the $6,000 third party settlement amount, plaintiff acknowledged that she had received that full recovery, and the made-whole rule required nothing more. After deducting the $400 in litigation expenses attributable to the recovery of the $1,000 insured portion of plaintiff's damages, 21st Century was entitled, under the automobile insurance policy's reimbursement provision, to the balance of $600. This means that as to the $1,000 *insured* portion of the loss, plaintiff retained the entire amount, and 21st Century paid all of the litigation expenses attributable to its recovery. As to the $5,000 *uninsured* portion of the loss, plaintiff has paid the litigation expenses attributable to the recovery of that amount, but that payment put her in no worse position than any other uninsured personal injury plaintiff.

For the reasons I have given above, I join in affirming the Court of Appeal's judgment.

**WERDEGAR, J., Concurring.**—I agree with the majority that the made-whole rule[1] does not bar 21st Century Insurance Company (21st Century) from seeking reimbursement for the no-fault medical payment (med-pay) insurance proceeds it paid Silvia Quintana, subject to deduction under the common fund doctrine for its share of the attorney fees Quintana expended to obtain payment from the tortfeasor. I write separately to offer an alternative rationale for that conclusion.

As the majority notes (maj. opn., *ante*, at p. 517), Quintana argues that attorney fees and costs should be deducted from an insured's recovery before determining whether the insured has been made whole and is obligated to reimburse the insurer; in contrast, 21st Century argues attorney fees should be disregarded. As I shall explain, the rule Quintana advocates creates significant disparities in the treatment of similarly situated insurers, as well as anomalies in the treatment of insureds. The rule 21st Century advocates, in contrast, promotes uniformity of outcomes and is consistent with the nature and purpose of med-pay insurance.

I

The conclusion that 21st Century is correct can be seen by considering the relationship between subrogation and reimbursement.

Subrogation and reimbursement are closely related. In a subrogation case, an insurer pays its insured on a claim and thereupon succeeds to any rights the insured might have against a third party for conduct giving rise to the claim, to the extent of the amount the insurer paid. (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 548 [30 Cal.Rptr.3d 303]; *Travelers Indem. Co. v. Ingebretsen* (1974) 38 Cal.App.3d 858, 864 [113 Cal.Rptr. 679].) Rather than recovering from its insured, the subrogated insurer may sue the tortfeasor independently or may intervene in its insured's

---

[1] " 'It is a general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for [his or] her injuries, that is, has been made whole.' " (*Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 104 [102 Cal.Rptr.2d 36], quoting *Barnes v. Independent Auto. Dealers of California* (9th Cir. 1995) 64 F.3d 1389, 1394.) " 'The general rule is that an insurer that pays a portion of the debt owed to the insured is not entitled to subrogation for that portion of the debt until the debt is fully discharged. In other words, the entire debt must be paid. Until the creditor has been made whole for its loss, the subrogee may not enforce its claim based on its rights of subrogation.' " (*Sapiano v. Williamsburg Nat. Ins. Co.* (1994) 28 Cal.App.4th 533, 536 [33 Cal.Rptr.2d 659], quoting 2 Cal. Insurance Law & Practice (1988 rev.) § 35.11[4][b], p. 35-47, fns. omitted.)

suit against the tortfeasor. (*Hodge v. Kirkpatrick Development, Inc.*, at p. 550.) However, because California for public policy reasons bars assignment of claims in personal injury cases (*Fifield Manor v. Finston* (1960) 54 Cal.2d 632, 637–643 [7 Cal.Rptr. 377, 354 P.2d 1073]; *Lee v. State Farm Mut. Auto. Ins. Co.* (1976) 57 Cal.App.3d 458, 465 [129 Cal.Rptr. 271]), such cases are governed by principles of reimbursement rather than subrogation (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 272–273 [37 Cal.Rptr.3d 434]). In reimbursement cases, the insurer does not succeed to its insured's rights but instead must wait for the insured to obtain recovery. (*Lee v. State Farm Mut. Auto. Ins. Co.*, at pp. 465–466.)

The public policy reasons that preclude assignment of personal injury claims affect the *procedure* governing how injured parties may recover from a tortfeasor by dictating the identity of who may sue; they do not alter the principle, common to reimbursement and subrogation both, that an insured should not obtain double recovery by obtaining (and retaining) payment for the same loss from both its insurer and a tortfeasor. (See *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 10–11 [84 Cal.Rptr. 173, 465 P.2d 61]; *Anheuser-Busch, Inc. v. Starley* (1946) 28 Cal.2d 347, 355 [170 P.2d 448] (dis. opn. of Traynor, J.).) Accordingly, I take it as a foundational premise that, as among an insurer, an insured, and a third party tortfeasor, the substantive outcome of proceeding by way of reimbursement should essentially mirror the outcome that would arise under subrogation.[2]

That the rule Quintana advocates leads to disparate outcomes in reimbursement and subrogation cases is thus telling. Consider as a hypothetical a tortfeasor who causes an insured $6,000 in personal injuries, including $2,000 in medical expenses. As here, the insured has a $1,000 med-pay policy, files a claim, and is paid under the policy. Pursuant to the reimbursement model, the insured then sues the tortfeasor and recovers $6,000, with $1,800 of that going to her contingency-fee lawyer.[3] Under Quintana's argument—that in applying the made-whole rule the attorney's fee should be taken into account—the insured has recovered $5,200 ($1,000 from the insurer and $6,000 from the tortfeasor, less $1,800 to the attorney), but has not been made whole in light of her $6,000 loss, and owes nothing to the insurer. She keeps $5,200, while the insurer is out its $1,000 paid claim.

In contrast, if subrogation were available, the insurer, permitted to intervene in an action against the tortfeasor (see *Hodge v. Kirkpatrick*

---

[2] I address only the circumstances (as here) of an insurer that is, for public policy reasons, precluded from independently proceeding against the tortfeasor under subrogation, and not whether an insurer which could so proceed, but instead voluntarily elects to await reimbursement, should be placed in the same position under reimbursement as under subrogation.

[3] Though the hypothetical assumes a 30 percent contingency fee for simplicity's sake, it would not matter if a different rate were charged.

*Development, Inc., supra,* 130 Cal.App.4th at pp. 551–554; *Allstate Ins. Co. v. Mel Rapton, Inc.* (2000) 77 Cal.App.4th 901, 908–909 [92 Cal.Rptr.2d 151]), could recover $1,000 less its transaction costs for doing so and would be out not the full amount of the claim—$1,000—but only its transaction costs. The insured, on the other hand, would receive $1,000 from her insurer, would retain a $5,000 claim against the tortfeasor, and after suing, recovering the $5,000, and paying her contingency-fee lawyer $1,500 (30 percent of $5,000), would retain $4,500. Quintana's version of the made-whole rule would, in this hypothetical, result in the insured retaining $700 more than under subrogation—$5,200 versus $4,500—and the insurer losing a corresponding amount. Thus, her application of the rule would add to the procedural differences between reimbursement and subrogation significant substantive differences, with insureds recovering and retaining more under reimbursement than they would under subrogation, and insurers recovering less.

In contrast, under 21st Century's proposed application of the made-whole rule, the results of reimbursement and subrogation are the same, as they should be. Returning to the hypothetical, under the reimbursement model the insured who recovered $6,000 would, disregarding attorney fees, have been made whole for her $6,000 loss and would be obligated to reimburse the insurer its $1,000 payment, minus—under the common fund doctrine—the $300 attorney fees/transaction costs of recovering that sum. (See *Quinn v. State of California* (1975) 15 Cal.3d 162, 167–169 [124 Cal.Rptr. 1, 539 P.2d 761]; *Lee v. State Farm Mut. Auto. Ins. Co., supra,* 57 Cal.App.3d at pp. 467–469.) The insured thus would reimburse the insurer $700 and would retain $4,500 ($6,000 from the tortfeasor and $1,000 from the insurer, less $1,800 to her contingency-fee lawyer and $700 reimbursed to the insurer), the exact outcome that would arise under subrogation. The insurer, in turn, would be out not the full $1,000 claim paid, but only the transaction costs—the $300 attorney fees—expended to recover that amount from the tortfeasor. 21st Century's proposed application of the made-whole rule restores parity between outcomes under reimbursement and subrogation. For this reason, I think it is the correct rule.

## II

That the made-whole rule must be applied without considering an insured's attorney fees is apparent as well because to do otherwise would subtly change the very nature of the coverage involved in a med-pay policy.

Consider again the hypothetical involving a $6,000 personal injury claim with $2,000 in medical expenses. In this instance consider two injured insureds, each with $2,000 med-pay policies, one who sues and recovers from

the tortfeasor under a 40 percent contingency fee arrangement, the other who sues and recovers under a 30 percent contingency fee arrangement. Were attorney fees a factor in determining whether the insured was made whole, the amount each insured retains or reimburses her insurer would be dependent not on the extent of the insured's medical expenses (the putative reason for med-pay coverage) but on the extent of her attorney fees. The first insured, with a $2,000 med-pay policy, $2,000 in medical expenses, and $2,400 in attorney fees, would keep the entire amount received from her insurer; the second insured, with a $2,000 med-pay policy, $2,000 in medical expenses, and $1,800 in attorney fees, would pay back the $200 of excess recovery. If reimbursement were to hinge not on the amount of medical expenses ($2,000 in either case) nor on the amount of recovery ($6,000 in either case) but on the amount of attorney fees, the policy would be converted from a policy to reimburse for immediate medical expenses to one to reimburse for eventual legal expenses. This, as the majority correctly notes, is not what med-pay insurance was designed to do.

## III

For these reasons, I agree the Court of Appeal's judgment should be affirmed.