THOMPSON, J., Concurring and Dissenting.
I concur in those portions of the majority opinion which conclude the trial court correctly sustained the *88 demurrers to the first amended complaint, because Lueras did not state any viable cause of action. I respectfully dissent from those portions of the majority opinion which conclude the trial court incorrectly denied leave to amend, because Lueras did not demonstrate a reasonable possibility he can state any viable cause of action. Therefore, the trial court did not abuse its discretion and the judgment should be affirmed in all respects.
INTRODUCTION
There are three core areas of disagreement between my views and the views expressed by my colleagues in the majority opinion.
First, the majority refuses to acknowledge what the parties themselves do not dispute—there is no foreclosure upon which this wrongful foreclosure action can be based. Lueras admitted the trustee’s sale was rescinded before the trustee’s deed was recorded, and Lueras alleged he was never deprived of ownership or possession of his home. The trial court properly considered these facts when ruling on the demurrers and we are required to do the same when reviewing the propriety of those rulings. The consequence of the majority’s refusal to do so is akin to allowing a wrongful death action to proceed when the alleged victim did not die.
Second, despite recognizing the long-standing rule that a residential lender does not owe any duty of care to a borrower, the majority stretches to create an exception, and concludes a residential lender does owe a duty of care to not make misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale. There is no such exception. Furthermore, the majority fails to analyze whether Lueras pleaded or demonstrated a reasonable possibility he can plead facts sufficient to establish the elements of a negligent misrepresentation cause of action against Bank of America. Lueras did not and cannot plead any such facts.
Third, the majority concedes the breach of contract cause of action is hopelessly deficient, but asserts the provisions of Fannie Mae Announcement 09-05R (Announcement 09-05R) must be “read into” the forbearance agreement to circumvent those deficiencies. The majority cites no case which has followed this approach or found a borrower has a private contractual right to sue a lender for money damages based upon alleged noncompliance with Announcement 09-05R. Moreover, this approach violates basic principles of contract law and injects uncertainty into California residential lending.
*89 FACTS
A. Lueras’s Factual Allegations
The majority summarizes some of the factual allegations, and fails to note many of the glaring factual omissions in the verified first amended complaint. All of the factual allegations and omissions I find material are set out below. Of necessity there is some repetition, but only to keep everything in proper context.
Lueras owned the property (Property) and occupied it as his primary residence at all relevant times, through and including the date on which the first amended complaint was filed. Lueras did not allege he ever was deprived of ownership or possession of the Property.
In March 2007, Lueras refinanced the Property with a 30-year adjustable rate $385,000 loan (Loan) originated by Gateway Business Bank (Gateway). Gateway, a potentially indispensable party, was not named as a defendant in the first amended complaint and is not a party to this appeal.
The Loan was evidenced by a promissory note (Note) and secured by a deed of trust (Deed of Trust) which encumbered the Property. The Deed of Trust was attached to the first amended complaint.
Lueras did not allege Gateway subsequently retained or sold the Note and the beneficial interest under the Deed of Trust. Thus, the identity of the current lender under the Note and Deed of Trust (collectively Loan Documents) is uncertain.
Bank of America (as successor to Countrywide Home Loans Servicing) was the servicer of the Loan. Lueras did not allege Bank of America was a party to the Loan Documents.
Lueras did not allege Fannie Mae was a party to the Loan Documents. Moreover, Lueras did not allege the Loan was owned or insured by Fannie Mae.
Lueras’s regular monthly payment on the Loan was $1,965.10. Lueras has not made a full regular monthly payment on the Loan since December 2008.
In August 2009, more than eight months after Lueras stopped making regular monthly payments on the Loan, Bank of America offered him a forbearance agreement (Forbearance Agreement) and Lueras accepted.
*90 Fannie Mae is not a party to the Forbearance Agreement.
The Forbearance Agreement required Lueras to make reduced monthly payments on the Loan in the amount of $1,101.16 during the deferral period. Bank of America agreed to apply these reduced monthly payments to the delinquent full regular monthly payments on the Loan.
The Forbearance Agreement provides, “The Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the [reduced monthly payment] obligations under this [Forbearance] Agreement.”
The Forbearance Agreement also provides, “If this Agreement terminates, however, then any pending foreclosure action . . . may be immediately resumed from the point at which it was suspended, and no new notice . . . will be necessary to continue the foreclosure action, all rights to such notices being hereby waived . . . .”
Lueras agreed, “Upon termination of this [Forbearance] Agreement, if I have not entered into another agreement with Servicer to cure or otherwise resolve my default under the Loan Document [sic] or reinstated my Loan in full, the Servicer will have all of the rights and remedies provided by the Loan Documents . . . .”
Lueras acknowledged, “I further understand and agree that the Servicer is not obligated or bound to make any modification of the Loan Documents or provide any other alternative resolution of my default under the Loan Documents.”
Lueras made reduced payments on the Loan during the six-month deferral period under the Forbearance Agreement beginning in September 2009 and ending in March 2010, and “beyond for four more months.”
Lueras has not made any payment on the Loan since July 2010.
In October 2010, more than three months after Lueras stopped making reduced monthly payments, and more than 22 months after he stopped making regular monthly payments, ReconTrust Company (ReconTrust) recorded and served a Notice of Default (the Notice of Default) on Lueras.
The Notice of Default advised Lueras of his rights under the Loan Documents to cure the payment default and reinstate the Loan to avoid acceleration and sale. Lueras did not allege he exercised his right to pay the delinquent amount, cure the default, and reinstate the Loan.
*91 The Notice of Default also advised Lueras, “Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.” Lueras did not allege he tried to sell the Property prior to the trustee’s sale.
In February 2011, more than six months after Lueras stopped making reduced monthly payments, and more than 25 months after Lueras stopped making regular monthly payments, ReconTrust recorded and served a Notice of Trustee’s Sale (Notice of Sale).
The trustee’s sale was originally set for February 22, 2011, and was subsequently postponed three times to “3/2/11, 4/1/11, and 5/4/11.”
On May 5, 2011, Bank of America sent Lueras a letter stating he did not qualify for a modification under the Home Affordable Modification Program (HAMP).
Immediately after receiving the May 5 letter, “[Lueras] contacted Nancy Whitaker at Bank of America who advised plaintiffs [sz'c] that that letter was sent by a third party ‘home retention’ vendor and was an error. Ms. Whitaker further advised that plaintiffs were put into a program that was already approved . . . [and s]he just needed Fannie Mae’s approval.”
On May 6, 2011, Bank of America sent Lueras another letter stating his financial documents were being reviewed to determine if he qualified for a HAMP modification.
Immediately after receiving the May 6 letter, Lueras contacted Bank of America and was “informed this letter was sent in error as plaintiffs [sic] had already ‘been approved’ by the bank. Nancy Whitaker of Bank of America advised that the scheduled Trustee’s Sale of May 18, would be reset, pending approval of FANNIE MAE.”
Lueras implied but did not allege there was an “actual sale” on May 18, 2011. Lueras also did not allege he was deprived of ownership or possession of the Property as a result of that sale.
Lueras did allege he retained ownership and possession of the Property at all relevant times up to and including the date the first amended complaint was filed.
B. Lueras’s Factual Admissions
Lueras repeatedly admitted the trustee’s sale was rescinded before the trustee’s deed was recorded. These admissions were made in his written briefs and oral arguments both in the trial court and in this court, all as described below.
*92 In his opposition to the demurrers to the original complaint, Lueras admitted “after this lawsuit was filed the trustee was able to rescind” the trustee’s sale.
At the hearing on the demurrers to the original complaint, counsel for Lueras admitted, “I should inform the court that the sale was rescinded, so we are now at pre-foreclosure status. ”
Similarly, in his opposition to the demurrers to the first amended complaint, Lueras again admitted, “after this lawsuit was filed the trustee was able to rescind” the trustee’s sale.
And, at the hearing on the demurrers to the first amended complaint, counsel for Lueras admitted, “as the court properly noted in the tentative ruling, there was a rescission in this case.”
In his opening brief on appeal, Lueras admitted, “after this lawsuit filed, the trustee was able to rescind” the trustee’s sale; “the [trial] court focused on the sale that was rescinded after the litigation ensued”; and “as the [trial c]ourt noted, the sale had been rescinded.”
Likewise, in his reply brief on appeal, Lueras admitted and argued, “[t]he rescission of the trustee’s deed upon [sic] does not moot Mr. Lueras’ claims”; “after the lawsuit was filed, BAÑA [Bank of America] rescinded the trustee’s deed upon sale”; and “the trustee’s deed upon sale was not recorded . . . .”
Finally, at oral argument in this court, counsel for Lueras admitted there is no record of the trustee’s sale, the trustee’s deed was never recorded, and Lueras still has title to and possession of the Property.
DISCUSSION
A. Standard of Review and Lueras’s Burden on Appeal
“When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]” (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)
“ ‘To satisfy that burden on appeal, a plaintiff “must show in what manner he can amend his complaint and how that amendment will change the legal *93 effect of his pleading.” [Citation.] . . . The plaintiff must clearly and specifically set forth the “applicable substantive law” [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.]’ ” (Rossberg v. Bank of America, N.A. (2013) 219 Cal.App.4th 1481, 1491 [162 Cal.Rptr.3d 525].)
No authority commands or even suggests these pleading requirements do not apply unless the plaintiff has been given more than two bites at the apple. We are required to affirm the ruling if there is any ground on which the demurrer could have been properly sustained. (Scott v. JPMorgan Chase Bank, N.A. (2013) 214 Cal.App.4th 743, 752 [154 Cal.Rptr.3d 394].) Also, leave to amend should not be granted where an amendment would be futile. (Newell v. State Farm General Ins. Co. (2004) 118 Cal.App.4th 1094, 1100 [13 Cal.Rptr.3d 343].) It is axiomatic, “The law neither does nor requires idle acts.” (Civ. Code, § 3532.)
B. Factual Allegations, Judicial Notice and Factual Admissions
We accept the factual allegations of the verified first amended complaint as true. “ ‘We also consider matters which may be judicially noticed.’ (Serrano v. Priest (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)” (Blank v. Kirwan, supra, 39 Cal.3d at p. 318.) To that end, I take judicial notice (Evid. Code, § 452, subd. (d)) the trial court’s final minute order ruling on the demurrers expressly relied upon the fact that “plaintiff admits in the Opposition that the foreclosure sale was rescinded.”
We also take into account briefs and arguments, which are “reliable indications of a party’s position on the facts as well as the law, and a reviewing court may use statements in them as admissions against the party. [Citations.]” (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 335, p. 386.) Likewise, “[a]n express concession or assertion in a brief is frequently treated as an admission of a legal or factual point, controlling in the disposition of the case. [Citations.]” (Id., § 704, p. 773.)
One court citing Witkin held an admission in the opening brief was “the equivalent of a concession,” which, taken together with the failure to allege a necessary element, “controls the disposition of the case.” (Federer v. County of Sacramento (1983) 141 Cal.App.3d 184, 186 [190 Cal.Rptr. 187].) Another court also citing Witkin relied on concessions made by the plaintiff’s counsel during oral argument to show there was no basis for a cause of action. (DeRose v. Carswell (1987) 196 Cal.App.3d 1011, 1019, fn. 3 [242 Cal.Rptr. 368], superseded by statute on another ground as stated in Ramona v. Superior Court (1997) 57 Cal.App.4th 107, 112-113, fn. 6 [66 Cal.Rptr.2d 766].)
*94 In Brandwein v. Butler (2013) 218 Cal.App.4th 1485 [161 CaI.Rptr.3d 728] the court affirmed an order sustaining a demurrer without leave to amend, and expressly relied on the factual allegations and omissions in the complaint, together with factual admissions in the trial court and in appellant’s briefs. (Id. at p. 1515, fn. 19, citing, inter alia, Fassberg Construction Co. v. Housing Authority of City of Los Angeles (2007) 152 Cal.App.4th 720, 725 [60 Cal.Rptr.3d 375] [oral statement by counsel in same action is binding judicial admission] & Electric Supplies Distributing Co. v. Imperial Hot Mineral Spa (1981) 122 Cal.App.3d 131, 134 [175 Cal.Rptr. 644] [stipulations in brief constitute binding judicial admissions].)
Similarly, in Setlijf v. E. I. Du Pont de Nemours & Co. (1995) 32 Cal.App.4th 1525 [38 Cal.Rptr.2d 763] the court affirmed an order sustaining a demurrer without leave to amend and stated, “Plaintiff’s papers in opposition are reliable indications of his position on the facts and we may use these statements as admissions against him. [Citation.]” (Id. at p. 1536.) Likewise, in Rodas v. Spiegel (2001) 87 Cal.App.4th 513 [104 Cal.Rptr.2d 439], the court declared, “We also may, and shall, take judicial notice of admissions in plaintiff’s opposition to the demurrer. (Evid. Code, § 452, subd. (d).)” (Id. at p. 518.)
In sum, we are not permitted to turn a blind eye to Lueras’s admissions the trustee’s sale was rescinded before the trustee’s deed was recorded. These admissions are consistent with his verified affirmative allegations he was never deprived of ownership or possession of the Property. These admissions were properly considered by the trial court when ruling on the demurrers, without any objection by Lueras. We are required to do the same when reviewing the propriety of those rulings.
C. Negligence and Negligent Misrepresentation
The long-standing rule that a residential lender does not owe any duty of care to a borrower is well settled and summarized in the majority opinion. I would only add that all of the reasons why a residential lender owes no such duty to a borrower apply with even greater force to a servicer, even though courts are not always careful to differentiate between the duties of lenders and the duties of servicers. (Somera v. IndyMac Federal Bank, FSB (E.D.Cal., Mar. 3, 2010, No. 2:09-cv-01947-FCD-DAD) 2010 WL 761221, p. *5.)
Applying the no-duty rule to the negligence claim, the majority recognizes Bank of America did not owe Lueras a duty to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives, or to handle the Loan in any other way so as to prevent foreclosure. I agree. These are all core functions well within the scope of the conventional role of a residential lender and the no-duty rule applies.
*95 Despite recognizing the no-duty rule, the majority stretches to create an exception, and concludes Bank of America “does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale.” (Maj. opn., ante, at p. 68.) I disagree. There is no such exception. No duty is owed for purposes of negligent misrepresentation or negligence. (Aspiras v. Wells Fargo Bank, N.A. (2013) 219 Cal.App.4th 948, 963-964 [162 Cal.Rptr.3d 230].)
“As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty . . . owed by a defendant to the injured person. [Citation.] The determination of whether a duty exists is primarily a question of law. [Citation.]” (Eddy v. Sharp (1988) 199 Cal.App.3d 858, 864 [245 Cal.Rptr. 211].) “[T]he test for determining whether a financial institution owes a duty of care to a borrower-client ‘ “involves the balancing of various factors ....”’ [Citations.]” (Nymark v. Heart Fed. Savings & Loan Assn. (1991) 231 Cal.App.3d 1089, 1098 [283 Cal.Rptr. 53].)
Without balancing the various factors discussed in Nymark, the majority discovers a duty which has never before been recognized. But there is no reasoned basis for making any distinction between these residential lender-borrower communications and other residential lender-borrower communications. Communications about the status of a modification application or a trustee’s sale are also core functions well within the scope of the conventional role of a residential lender. Hence, the no-duty rule applies equally to negligence and negligent misrepresentation claims in this situation.
Furthermore, the rights and duties of lenders and borrowers regarding these communications are set forth in the Loan Documents and applicable law, including the federal Truth in Lending Act (15 U.S.C. § 1601 et seq.) and the California statutory nonjudicial foreclosure statutes (Civ. Code, §§ 2924 through 2924k.). It is inconsistent with these comprehensive and exhaustive statutory schemes to incorporate common law negligent misrepresentation claims in this context. (Cf. Gomes v. Countrywide Home Loans, Inc. (2011) 192 Cal.App.4th 1149, 1154 [121 Cal.Rptr.3d 819]; Residential Capital v. Cal-Western Reconveyance Corp. (2003) 108 Cal.App.4th 807, 824—829 [134 Cal.Rptr.2d 162].)
Leaving aside the duty question, Lueras did not request leave to plead a negligent misrepresentation cause of action. But even if he had, Lueras also did not demonstrate a reasonable possibility he can plead “ “(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another’s reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) *96 resulting damage.” ’ [Citation.]” (Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc. (2011) 196 Cal.App.4th 1559, 1573 [127 Cal.Rptr.3d 589].)
Lueras alleged both oral and written misrepresentations by Bank of America about the status of the loan modification application and the trustee’s sale.
The alleged oral misrepresentations were all made by Whitaker in early May 2011 and may be summarized as follows. First, Whitaker told Lueras the May 5 and May 6 letters had been sent in error. Second, she told him the loan modification application had been approved by Bank of America, subject to Fannie Mae approval. Third, she told him the trustee’s sale would be reset, again pending Fannie Mae approval.
Regarding the statements the May 5 and 6 letters had been sent in error, Lueras did not allege and cannot allege these statements were untrue or that Whitaker had no reasonable ground for believing them to be true. Obviously, his entire case is predicated upon his alleged reliance on the truth of these statements.
Regarding the statement Bank of America had approved the loan modification application, subject to Fannie Mae approval, again Lueras did not allege this statement was untrue or Whitaker had no reasonable ground for believing it to be true. Besides, this statement is conditional, and he did not allege that condition was satisfied.
Regarding the statement the trustee’s sale would be reset, while Lueras did allege this was untrue, he did not allege Whitaker said the trustee’s sale had been reset. Instead he alleged she said it would be reset. So this statement is really a prediction about a future event, not a misrepresentation about a past or existing fact.
Lueras also did not allege any facts showing he justifiably relied on the statement the trustee’s sale would be reset. In particular, Lueras did not allege he did or refrained from doing anything after this statement was made (on May 6, 2011) and before the trustee’s sale occurred (on May 18, 2011). All of the alleged actions or inactions took place well before this statement was made.
Regarding all of these statements, Lueras did not allege and cannot allege any resulting damage. Again the trustee’s sale was rescinded so Lueras was never deprived of ownership or possession of the Property.
Regarding the alleged written misrepresentations in the May 5 and 6 letters, Lueras cannot allege he reasonably relied on the contents of those *97 letters, and at the same time allege he relied on the statements that those letters had been sent in error. He cannot have it both ways. But even if he could, again Lueras did not allege and cannot allege he suffered any resulting damage, because the trustee’s sale was rescinded.
In conclusion, Lueras did not plead or demonstrate a reasonable possibility he can plead sufficient facts to establish the elements of a negligent misrepresentation cause of action against Bank of America based upon communications concerning the status of the loan modification application or the trustee’s sale. Hence, there is no basis for granting Lueras’s leave to allege a negligent misrepresentation cause of action.
D. Breach of Contract
Lueras alleged Bank of America breached the Forbearance Agreement by terminating the deferral period, and by failing to offer him a loan modification or some other resolution before commencing or resuming the foreclosure process. But Lueras did not plead sufficient facts to establish the elements of this claim.
1. Breach
Lueras did not plead any facts showing Bank of America breached the Forbearance Agreement “by terminating the ‘Deferral Period’ . . . .” Actually, Lueras did not plead any facts showing Bank of America terminated the deferral period at all. On this point, I agree with the majority opinion. Examining the first amended complaint as a whole reveals the parties intended the deferral period to terminate and it did terminate by its own terms no later than March 16, 2010.
Lueras also did not plead any facts showing Bank of America breached the Forbearance Agreement by failing to offer him a loan modification or some other resolution before commencing or resuming the foreclosure process. The Forbearance Agreement simply did not require Bank of America to do or abstain from doing any of the things Lueras complained of. Thus, Bank of America did not breach the Forbearance Agreement by failing to offer Lueras a loan modification or some other resolution before commencing or resuming the foreclosure process.
Recognizing the inevitability of this conclusion, the majority asserts the “provisions of [Fannie Mae] Announcement 09-05R must-be read into” the Forbearance Agreement to circumvent these deficiencies. (Maj. opn., ante, at p. 73.) The majority has not cited any case which has followed this approach or found a borrower has a private contractual right to sue a lender for money *98 damages based upon alleged noncompliance with Announcement 09-05R. (Cf. Bank of America, N.A. v. Roberts (2013) 217 Cal.App.4th 1386, 1399 [159 Cal.Rptr.3d 345] [HAMP and programs like HAMP consistently construed to create no private rights or private causes of action for borrowers].) One can easily see why.
To begin with, the Forbearance Agreement is a contract between Lueras, as the borrower under the Loan Documents, and Bank of America, as the servicer and the ostensible agent of the lender under the Loan Documents. Fannie Mae is not a party to the Forbearance Agreement and Lueras did not allege the Loan is owned or insured by Fannie Mae. In short, it appears Fannie Mae is a complete stranger to the Forbearance Agreement with no contractual rights or obligations thereunder vis-á-vis the Loan.
Next, reading Announcement 09-05R into the Forbearance Agreement violates basic principles of contract formation and interpretation. Announcement 09-05R was not part of the Forbearance Agreement offer or acceptance. In fact, there is no reference to Announcement 09-05R in the Forbearance Agreement, and there is no ambiguity in the Forbearance Agreement which requires or even permits resort to this extrinsic evidence for interpretation. Doing so contradicts some of the express terms of the Forbearance Agreement, and renders other express terms meaningless.
The only case cited by the majority to support this radical departure from established law is West v. JPMorgan Chase Bank, N.A. (2013) 214 Cal.App.4th 780 [154 Cal.Rptr.3d 285]. West is legally and factually inapposite.
The contract at issue in West was a trial period plan (TPP) under HAMP, while the Forbearance Agreement at issue here is not. Indeed, the Forbearance Agreement bears no resemblance in form or function to a TPP under HAMP. They are different creatures which serve different purposes. A TPP tests the viability of an identified and agreed upon long-term solution. The Forbearance Agreement merely provides time to see if a viable long-term solution can be identified and agreed upon.
In addition, the TPP in West was still in effect, and the borrower tendered a timely reduced monthly payment just two days before the trustee’s sale. (West v. JPMorgan Chase Bank, N.A., supra, 214 Cal.App.4th at p. 790.) Here, the Forbearance Agreement ended no later than March 16, 2010, and Lueras stopped making reduced monthly payments on July 1, 2010, more than nine months before the trustee’s sale.
Lastly, the majority suggests the implied covenant of good faith and fair dealing may also be used to circumvent these deficiencies. Not so. “[A]n *99 implied covenant of good faith and fair dealing cannot contradict the express terms of a contract.” (Barroso v. Ocwen Loan Servicing, LLC (2012) 208 Cal.App.4th 1001, 1014 [146 Cal.Rptr.3d 90].) Similarly, the implied covenant cannot be used to create additional obligations not present in a contract, and cannot be used to vary the terms of an unambiguous contract. (21st Century Ins. Co. v. Superior Court (2009) 47 Cal.4th 511, 527 [98 Cal.Rptr.3d 516, 213 P.3d 972].)
2. Damages
Lueras did not plead any facts showing he was damaged by Bank of America’s alleged termination of the deferral period or failure to offer him a loan modification or some other resolution before commencing or resuming the foreclosure process. Lueras was always obligated to repay the Loan, and the reduced monthly payments allegedly made during and after the deferral period, together with any late fees and charges resulting from his payment default, were always owed under the Loan Documents, separate and apart from the Forbearance Agreement.
3. Leave to Amend
Lastly, Lueras did not demonstrate a reasonable possibility he can plead sufficient facts to establish the elements of a breach of contract cause of action against Bank of America. It is not sufficient for Lueras to assert “an abstract right to amend.” (Rakestraw v. California Physicians’ Service (2000) 81 Cal.App.4th 39, 43 [96 Cal.Rptr.2d 354].) Again, he must set forth the legal authority for the claim, the elements of the claim, and the specific factual allegations that would establish each of those elements. (Rossberg v. Bank of America, supra, 219 Cal.App.4th at p. 1491.) Lueras made no attempt to meet this burden. Therefore, the demurrers to the breach of contract cause of action based upon the Forbearance Agreement were properly sustained without leave to amend. On this point the majority opinion’s reliance upon the liberal policy regarding amendments to justify a contrary result is misplaced. (Id., at p. 1503.)
E. Fraud
The majority states the elements of a fraud cause of action. They are the same as the elements of a negligent misrepresentation cause of action discussed above, with the exception of the knowledge element. (Aspiras v. Wells Fargo Bank, N.A., supra, 219 Cal.App.4th at p. 963, fn. 4.) Since the elements are essentially the same, all of the deficiencies in the negligent misrepresentation claim discussed above are also deficiencies in the fraud claim. There are additional deficiencies as well.
*100 Lueras alleged, based upon the Forbearance Agreement, Bank of America led him to believe it was going to work with him so he could stay in his home as long as he made the requested (i.e., reduced) monthly payments, but instead Bank of America concealed the fact it was not going to identify a long-term solution. Yet, Lueras did not allege any part of the Forbearance Agreement was false. And, once again, nothing in the Forbearance Agreement required Bank of America to offer Lueras a loan modification or identify another resolution.
Lueras also alleged the May 5 letter stated Bank of America would contact Lueras in 10 days to explore foreclosure alternatives, but this statement was false, because the trustee’s sale occurred before the 10 days had elapsed. Then again, Lueras alleged he relied on the fact he was told the May 5 letter had been sent in error, so any alleged reliance on the contents of that letter was unreasonable. Once more, he cannot have it both ways. Plus, his alleged reliance in making the reduced monthly payments ended in July 2010, more than 10 months before the May 5 letter was sent.
For all of these reasons, I agree with the majority the demurrers to the fraud cause of action were properly sustained. On the other hand, I do not agree with the majority, “the exhibits attached to the First Amended Complaint . . . demonstrate there is a reasonable possibility the defects in the fraud cause of action can be cured by amendment.” (Maj. opn., ante, at p. 79.) The exhibits at issue are the May 5 and 6 letters.
On this point, the majority relies on the same faulty logic as Lueras.[1] But any alleged reliance on the May 5 and 6 letters was patently unreasonable because Lueras pled he relied on the oral representation those letters had been sent in error.
And at any rate, Lueras did not and cannot allege any “specific damages” he suffered, because the trustee’s sale was rescinded. (Rossberg v. Bank of America, supra, 219 Cal.App.4th at p. 1499.) Consequently, the demurrers to the fraud cause of action were properly sustained without leave to amend.
F. Business and Professions Code Section 17200
Finally, I disagree with the majority statement, “the allegation that Lueras’s home was sold at a foreclosure sale is sufficient to satisfy the economic injury *101 prong of the standing requirement of section 17204.” (Maj. opn., ante, at p. 82.) There is no such allegation in the first amended complaint. And, in any event, the exact opposite is true. Lueras has not suffered any legally cognizable harm. Rather, he has experienced an incredible windfall. Lueras has avoided foreclosure on the Property even though he has not made any payment on the Loan since July 2010. Hence, Lueras has no standing and the demurrers to the unfair competition claim were properly sustained without leave to amend.
CONCLUSION
The trial court correctly sustained the demurrers to the first amended complaint and did not abuse its discretion by denying leave to amend. The contrary decision by the majority represents a departure from settled law and creates uncertainty which may disrupt California residential lending. The judgment should be affirmed.

 For example, the majority states: “In the May 5, 2011 letter, Bank of America informed Lueras any pending foreclosure sale would be ‘on hold’.... Whitaker . .. told him the May 5 letter was sent in error .... Despite the express representation in the May 5 letter that no foreclosure sale would proceed, . . . the foreclosure sale was conducted on May 18.” (Maj. opn., ante, at p. 80.)